JAMES F. GREEN, AS ADMINISTRATOR OF, ETC., OF WILLIAM GREEN, DECEASED, APPELLANT, *v.* ANDREW J. SANDERS, COLLECTOR AND SPECIAL ADMINISTRATOR OF, ETC., OF WILLIAM GREEN, DECEASED, RESPONDENT.

*Special administrator — section 24 of chapter 460 of 1837 only provides for his expenses, but not for his compensation — he entitled to the same fees as executors, to be computed on the value of the whole estate received by him.*

There is no statute providing for the compensation of a special administrator or collector. Section 24 of chapter 460 of 1837 relates only to his expenses and not to the compensation for his own services.

He is, however, within the equity of the statute relating to executors and administrators, and entitled to the same fees and commissions.

His commissions are not to be based, simply, upon the actual money received and paid out, but upon the value of the whole estate received, and passed over by him.

A decree of a surrogate will not be reversed because it allows a gross sum to the administrator for his services, if it appear that it does not exceed the amount of his statutory fees.

APPEAL from a decree of the surrogate of Cayuga county, made on the settlement of the accounts of the respondent as special administrator.

*S. Edwin Day* and *W. E. Hughitt*, for the appellant.

*S. E. Payne*, for the respondent.

SMITH, J.:

The appellant challenges the surrogate's allowance of the gross sum of $1,000 to the special administrator for his services. It is insisted that commissions only should have been allowed, at the rate fixed by statute for executors and administrators, and only upon the amount of money which passed through the respondent's hands. There is no statute providing for a compensation to special administrators or collectors, except section 24 of chapter 460 of the Laws of 1837, which is in these words : "Every collector so appointed shall have authority to collect the goods, chattels, personal estate and debts of the deceased, and to secure the same at such reasonable expense as the surrogate shall allow," etc. Under this provision the amount of compensation provided for is left to the discretion of the surrogate, and if the section relates to services as well as expenses, the allowance, in the present case, cannot be disturbed, unless there was an abuse of discretion. We think, however, that the provision cited has no reference to compensation for services, and that there is no express provision of statute fixing such compensation. But it does not follow that a special administrator is to receive no compensation for his services. As was held by the chancellor *In re Roberts* (3 John. Ch., 42), in the case of a committee over a lunatic, he is within the equity of the statute fixing the compensation of executors and administrators. At the time when that case was decided, the statute of 1817 was in force, which authorized the Court of Chancery to make a reasonable allowance to executors and administrators. (Laws 1817, chap. 251.) Under that statute, the chancellor, in the case cited, fixed the compensation at the rates which were afterwards adopted in the Revised Statutes and are now in force, as subsequently amended. (2 R. S., 93, § 58, Laws 1863, chap. 362, § 8.) We think the case is within the equity of the statutes cited.

Although the surrogate erroneously allowed a sum in gross, the allowance is not to be set aside for that reason, unless it exceed the commissions to which the collector was entitled, at the rates

fixed by the statute. Those rates are, for receiving and paying out money, five per cent on the first $1,000, two and one-half per cent on the next $10,000, and one per cent on the remainder, in addition to expenses. (Laws 1863, *supra*.) We think, however, the allowance is not to be confined to the money that passes through the hands of the collector. In many cases, an allowance thus limited, would be a very meager and inadequate compensation. The duty of the collector is to preserve the estate and turn it over to the executor or administrator when appointed. He cannot sell, except by order of the surrogate to preserve the estate. He may have the custody and care of a large amount of securities, or of valuable animals, herds of cattle or the like, for years, without handling any considerable amount of money. The present case illustrates the position. The respondent accounted for property valued at over $104,000. Very little of it was money — over $43,000 was in mortgages, and over $7,000 in stock and cattle on five different farms. The estate was in his hands over two years and a half. We think a proper basis for the allowance of the commissions of the special administrator, in this case, is the value of the estate received and passed over by him. As the sum allowed does not exceed the commissions to which the respondent was entitled on that basis, the error in the form of the allowance worked no harm.

The respondent was allowed certain payments of taxes made by him, including the fees of the tax collectors, at the rate of five per cent. There was a period of thirty days within which the taxes might have been paid at a charge of only one per cent for fees. It is insisted, by the appellant, that the surrogate erred in crediting the respondent with the extra four per cent, which he might have saved to the estate if he had paid in season. Upon this point the respondent testified as follows : " He," the tax collector, " came to see me several times, but I could not get any agreement about it. Lastly, he came and said he would have to levy and sell, and then there was some agreement made between the attorneys for the parties." The testimony is not very explicit, but as the witness was afterwards cross-examined by the appellant's counsel, and his attention was not called to that part of his testimony, nor was it contradicted in any respect whatever, it is to be

presumed that the appellant accepted it as the true version of the matter, and that the action of the respondent, in regard to paying the taxes, was acquiesced in by the respective parties.

A point is made that the surrogate received and acted upon an *ex parte* affidavit of the respondent, after the proofs were closed, without notice to the appellant. There is no evidence that the reception of the affidavit was without notice to the appellant. The averment to- that effect in the petition of appeal is denied in the answer. Besides, if the admission of the affidavit was erroneous, it was innocuous, as there is ample evidence outside of it to sustain the surrogate's decision.

The decree should be affirmed, with costs.

TALCOTT, P. J., and HARDIN, J., concurred.

Decree of surrogate affirmed, with costs to respondent, to be paid by appellant out of the estate.